IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

SMITH BARNEY, a DIVISION OF
CITIGROUP GLOBAL MARKETS, INC.,

*Plaintiff*,

v.

CRAIG DARLING, JEFFREY KINZIGER,
JEFFREY PUISSANT, THOMAS WIERS,
LINDSEY KABAT and ROBERT W. BAIRD
& CO.,

*Defendants.*

Case No. _____

**BRIEF IN SUPPORT OF PLAINTIFF'S APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF IN AID OF ARBITRATION**

Plaintiff Smith Barney, A Division of Citigroup Global Markets, Inc., ("Smith Barney"), files this Brief In Support Of Plaintiff's Application for Temporary Restraining Order In Aid Of Arbitration and states:

I. **INTRODUCTION**

1. This is a classic case of employee disloyalty, misappropriation of confidential information and trade secrets, unfair competition and tortious interference with contract. Defendants Craig Darling ("Darling"), Jeffrey Kinziger ("Kingziger"), Jeffrey Puissant ("Puissant"), Thomas Wiers ("Wiers") and Lindsey Vogel Kabat ("Kabat") (collectively "Defendants") were Financial Consultants, and a Financial Consultant Associate, respectively, at Smith Barney's Green Bay, Wisconsin office until they unexpectedly resigned on Friday, May 22, 2009. Soon thereafter, if not before, they breached the confidentiality, non-disclosure and non-solicitation covenants of their agreements with Smith Barney by contacting Smith Barney clients and urging Smith Barney clients to move their accounts to their new employer, Robert W.

{00051865.DOC}

Baird & Co. ("Baird"), in what is becoming a habit with Baird recruits.[1] Smith Barney invested substantial time and effort in helping develop Darling's, Kinziger's, Puissant's, Wiers' and Kabat's status as financial consultants and a financial consultant associate at Smith Barney. Smith Barney paid Darling, Kinziger, Puissant, Wiers and Kabat salaries while they were honing their skills to be Financial Consultants and assisted them in building up their businesses. Smith Barney provided them with ongoing training, numerous client leads and referrals, in some cases – entire books of business - and confidential and trade secret customer information. Smith Barney provided them with substantial support services, including sales and administrative support, and ongoing sales and compliance training. In addition, they also benefited from Smith Barney's extensive advertising and marketing campaigns and its reputation in the industry.

2. Now, it appears that they have misappropriated confidential trade secret information in the form of customer lists and other customer information and are now using such information to solicit Smith Barney's clients for themselves and Baird, a direct competitor of Smith Barney. It is clear that Darling, Kinziger, Puissant, Wiers and Kabat possess and are using Smith Barney's confidential trade secret customer information to solicit Smith Barney's clients to transfer their accounts to Baird.

3. This is an action for temporary and preliminary injunctive relief, pending an arbitration hearing on the merits before the Financial Industry Regulatory Authority ("FINRA") under Rule 13804 of the FINRA Code of Arbitration Procedure, resulting from Defendants' continuing breach of contract, breach of fiduciary duty, misappropriation of trade secrets and confidential information, unfair competition and tortious interference with contract. In breach of their common law duties, Defendants have willfully and maliciously misappropriated Smith

---

[1] On April 3, 2009, just a few weeks prior to this filing, Smith Barney received a TRO against Baird in Iowa for similar egregious actions. That order is attached hereto as Exhibit A.

2

{00051865.DOC}

Barney's trade secrets in the form of customer lists and other customer information and used such information to solicit Smith Barney's customers for their new employer, Baird. Likewise, upon information and belief, Baird is encouraging them to do so. Unless restrained by this Court, Defendants will continue their illegal activity to the immediate and irreparable harm of Smith Barney.

## II. STANDARD FOR AWARDING A TEMPORARY RESTRAINING ORDER

4. In order to prevail on an application for TRO or request for preliminary injunctive relief, a party must prove: (i) its case has a likelihood of success on the merits; (ii) no adequate remedy at law exists; and (iii) it will suffer irreparable harm if the injunction is not granted. *Incredible Tech., Inc. v. Virtual Tech., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005); *FoodComm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003). If these three conditions are met, then the court must balance the harm to the party seeking the injunction if the injunction is not issued against the harm to the party opposing the injunction if the injunction is granted. *FoodComm*, 328 F.3d at 303. The court must balance the factors by using a sliding scale analysis: the greater the party's chance of success on the merits, the less strong a showing it has to make that the balance of harm is in its favor. *Id*.

5. Here, each of the three factors favors Smith Barney. First, Smith Barney has a substantial likelihood of winning on the merits since, *despite their confidentiality, non-disclosure and non-solicitation promises, Defendants have specifically used Smith Barney's trade secret and confidential information to solicit Smith Barney's Green Bay, Wisconsin office clients and have attempted, and is succeeding in causing, them to do business with Baird.*

5. Second, Smith Barney will suffer irreparable harm if Defendants continue to use Smith Barney trade secrets and confidential information to lure clients away from Smith Barney

3

and to Baird. Smith Barney, and in particular the branch where Defendants were employed, would be severely damaged if it were to lose a substantial amount of client accounts to Baird. *Moreover, the agreements signed by Darling, Kinziger, Puissant, Wiers and Kabat have been upheld in several courts, as well as in arbitrations before the FINRA. In fact, as is noted above, a federal court in Iowa recently upheld similar Smith Barney agreements **against Baird**.*

6. Finally, Regulation S-P of the Securities and Exchange Commission specifically prohibits Defendants from taking, removing or possessing confidential client financial information from Smith Barney. (*See*, 17 CFR 248).

7. Issuing the TRO will only require Defendants to do what they initially promised–keep Smith Barney's trade secret and confidential information secret and not use that information to take business away from Smith Barney. Further, the TRO would not prevent Defendants and Baird from *lawfully* competing with Smith Barney, it would simply require them not to use unfair or illegal tactics.[2] Finally, the public policy factor weighs heavily in Smith Barney's favor because misappropriation of trade secrets not only subjects Defendants to civil liability under Wisconsin law, but is also a crime. WIS. STAT. ANN. § 943.205. Balancing all these factors, there will be more harm to Smith Barney if the TRO is not granted than there will be to Defendants if the TRO is granted.

---

[2] As the Court is aware, approximately 30 major brokerage industry firms, including Smith Barney have signed what has become known as the "Protocol Agreement." This Protocol Agreement establishes certain guidelines for the recruitment of brokers from one signatory firm to another. The participating firms have agreed that if said guidelines are followed, injunctive relief will not be sought against the departing broker. However, if a firm is not a member of the Protocol, they are not afforded any of these protections. Baird is not a member of the Protocol, and, as such, is not entitled to any of its protections. Although Baird has previously attempted to argue that Smith Barney's mere participation in the Protocol prohibits it from obtaining injunctive relief against non-protocol firms, multiple courts have held that Smith Barney's membership as a Protocol firm does not dispense with the irreparable harm element of injunctive relief. *Exhibit A*. As such, Smith Barney is entitled to seek all remedies provided under its agreements with Darling, Kinziger, Puissant, Wiers and Kabat, Wisconsin law and/or FINRA rules.

## III. ARGUMENT AND AUTHORITIES

7.  This court should issue a TRO against all Defendants because they engaged in trade secret misappropriation against Smith Barney by improperly soliciting Smith Barney clients, engaging in unfair competition, tortiously interfering with Darling, Kinziger, Puissant, Wiers and Kabat's contracts and encouraging such behavior. Smith Barney will suffer irreparable harm if the Court does not issue a TRO to enjoin Defendants' conduct. FED. R. CIV. P. 65.

### A. Smith Barney Gave Darling, Kinziger, Puissant, Wiers and Kabat Trade Secret and Confidential Information Which Can Be Protected Only By Issuance Of A Temporary Restraining Order.

8.  Smith Barney does not reveal confidential information about its clients, marketing strategies, or technical information to third parties. (*See* the Plaintiff's Application for Temporary Injunctive Relief, ¶¶ 58-61). To ensure the confidentiality of this information, Smith Barney keeps individual client information in a particular broker's office or in the limited access and locked operations area. (*Id.*, ¶ 60). Smith Barney's offices are always locked during non-working hours and the building is monitored by a security firm. (*Id.*). Further, Smith Barney password-protects its computer system, and only the broker, their sales assistant, the branch manager, and necessary operational personnel may access the broker's account information – not even other brokers may access a particular broker's account information. (*Id.*). Thus, this information is valuable and unique to Smith Barney, and it constitutes a unique asset Smith Barney developed at great expense. (*Id.*).

9.  Smith Barney's confidential client lists, contacts, marketing strategies, and technical data are trade secrets worthy of protection. *Molex, Inc. v. Nolen*, 759 F.2d 474, 479 (5th Cir. 1985) (former employees have a fiduciary duty to protect secret information and any

5

information defendant learned about plaintiff's customers were trade secrets or confidential information); *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1191-92 (5th Cir.1984) (trade secrets have competitive value and disclosure of a single secret may cause irreparable harm); *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 502-03 (5th Cir. 1982) (trade secrets do not have to be "patentable" – their protection only depends upon breach of faith or reprehensible conduct in learning about a competitor). Smith Barney provided Defendants with sensitive information, and required Defendants to promise not to disclose this information to third parties.

10. The 7th Circuit has upheld agreements similar to those entered into by Darling, Kinziger, Kabat, Puissant and Wiers. In *JAK Productions, Inc. v. Wiza*, 986 F.2d 1080 (C.A. 7, Ind. 1993), the court held injunctive relief was appropriate to ensure that the Defendants would not solicit clients from its former employer for one year after the termination of their employment.

**B. The Court Should Enjoin Darling, Kinziger, Puissant, Wiers and Kabat From Violating Their Agreements Because There Is Also A Substantial Likelihood That Smith Barney Will Prevail On This Claim.**

11. At the commencement of their employment with Smith Barney, Darling, Kinziger, Puissant, Wiers and Kabat all signed employment agreements in which they agreed, among other things, not to disclose confidential information and further agreed not to solicit, contact, accept or do business with Smith Barney clients for a period of one year after their termination from Smith Barney as a condition of their employment. (*See* **Exhibits A – L**, attached to the Application for Injunctive Relief and incorporated herein.) They also agreed and consented to the issuance of a Temporary Injunction from a court of competent jurisdiction if they breached their agreements. In exchange for these promises, Smith Barney gave Darling, Kinziger, Kabat, Puissant, and Wiers extensive access to valuable confidential information,

training, support, sponsorship for their securities examination and compensation. Despite their assurances, Darling, Kinziger, Kabat, Puissant, and Wiers violated the terms of their respective agreements – they used and continue to use Smith Barney customer account information to solicit Smith Barney clients to move their accounts to Baird, in direct violation of the terms of their agreements with Smith Barney.

12. This agreement is enforceable under Wisconsin law, and provides an independent basis on which this Court may grant the relief requested.

13. Darling, Kinziger, Puissant, Wiers and Kabat breached their respective agreements with Smith Barney when they contacted Smith Barney clients they serviced or which became known to them while at Smith Barney. Thus, a TRO is justified to prevent Smith Barney from suffering additional harm. *Merrill Lynch v. Salvano*, 999 F.2d 211, 215 (7th Cir. 1993).

14. These agreements clearly are enforceable under Wisconsin law. *Farm Credit Services of North Central Wisconsin v. Wysocki*, 627 N.W.2d 444 (Wis. 2001). This situation is similar to that in *Wysocki*, a Wisconsin Supreme Court case interpreting the Wisconsin non-compete statute, in that it involves a promise by Smith Barney to provide consideration – valuable client and product information necessarily involving confidential information – to Darling, Kinziger, Puissant, Wiers and Kabat in exchange for a covenant not to solicit and not to disclose confidential information. In *Wysocki*, as here, the agreement was enforceable because there was a promise by the employer to provide confidential information and training. Here there are explicit promises by Smith Barney to provide such information and training – all of which Smith Barney has, in fact, provided.

15. Furthermore, the time limitation of only one year, has been upheld by the Wisconsin courts as being reasonable and limited in length. *Techworks, LLC v. Wille*,

2208AP1702 (Wis. Ct. App. March 31, 2009) (unpublished) (citing to *Rollins Burdick Hunter of Wisconsin v. Hamilton,* 304 N.W.2d at 752 at 753, 757 (Wis. 1981) (finding that two year time limitation is reasonable in length and is enforceable).

16. Moreover, contracts identical to those signed by Darling, Kinziger, Puissant, Wiers and Kabat have been not only the basis for granting injunctive relief by other courts, but have been upheld by FINRA arbitration panels which have enforced the full term of the non-solicitation agreements. (*See i.e.* Orders attached hereto at Exhibit B.)

C. **Even When Arbitration Is Required, Smith Barney Is Still Entitled To Injunctive Relief Pending Arbitration.**

17. Even when a dispute is ultimately resolved in arbitration before the FINRA, a former employer is entitled to injunctive relief from a court pending an outcome of arbitration. Rule 13804 of the FINRA Code of Arbitration Procedure expressly permits Smith Barney to seek this relief in Court:

> [P]arties may seek injunctive relief *either* within the arbitration process *or from a court of competent jurisdiction.*

Furthermore, the United States Court of Appeals for the Seventh Circuit in *Merrill Lynch v. Salvano,* 999 F.2d 211, 214 (7th Cir. 1993), and the First, Second, Third, Fourth, Fifth, Sixth, Eighth, Tenth and Eleventh Circuit Court of Appeals all have held that a former employer is entitled to this very injunctive relief pending the outcome in arbitration to preserve the status quo. *See Teradyne, Inc. v. Mostek Corp.,* 797 F.2d 43 (1st Cir. 1996); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 910 F.2d 104 (2nd Cir. 1990); *Roso-Lino Beverage Distrib. v. Coca-Cola Bottling Co.,* 749 F.2d 124 (2nd Cir. 1984); *Ortho Pharmaceutical Corp. v. Amgen, Inc.,* 887 F.2d. 460 (3rd Cir. 1989); *Merrill Lynch v. Bradley,* 756 F.2d 1048 (4th Cir. 1985); *Performance Unlimited, Inc. v. Questar,* 52 F.3d 1373 (6th Cir. 1995); *Merrill Lynch v.*

*Salvano*, 990 F.2d 211, 214 (7th Cir. 1993); *Peabody Coalsales, Inc. v. Tampa Elec. Co.*, 36 F.3d 46, 48 (8th Cir. 1994); *PMS Dist. Co. v. Huber*, 863 F.2d 639 (9th Cir. 1988); *Merrill Lynch Pierce Fenner & Smith, Inc. v. Dutton*, 844 F.2d 726 (10th Cir. 1988); *Merrill Lynch v. Hegardy*, 808 F. Supp. 1555 (S.D. Fla. 1992), *aff'd*, 2 F.3d 405 (11th Cir. 1993).

18. The facts in *Salvano, Bradley, Blumenthal, Hegardy, Dutton,* and *Ruscitto* are the same as in the instant case. In each case, a former employee left the employ of the plaintiff; copied or retained books and records, including customers' names and addresses; immediately commenced employment with a competitor; and used the plaintiff's confiscated customer information to solicit the plaintiff's accounts for the new employers. In *Bradley*, the Fourth Circuit expressly held as follows:

> The arbitration process would be a ***hollow formality*** where the arbitration award when rendered could not return the party to the *status quo ante*.... When an account executive breaches his employment contract by soliciting his former employer's customers, ***a non-solicitation clause requires immediate application to have any effect. An injunction even a few days after solicitation has begun is unsatisfactory*** because the damage is done. ***The customers cannot be "unsolicited."*** It may be impossible for the arbitration award to return the parties to the *status quo ante* because the prevailing parties' damages may be too speculative.

756 F.2d at 1053-54 (emphasis added). Similarly, in *Blumenthal*, the United States Court of Appeals to the Second Circuit reached an identical conclusion:

> Arbitration can become a "hollow formality" if parties are able to alter irreversibly the *status quo* before the arbitrator is to render its decision in the dispute.... A district court must ensure that the parties get what they bargained for -- meaningful arbitration of the dispute.

910 F.2d 1053. The Seventh Circuit also adopted this rationale in *Salvano*, 999 F.2d at 204.

19. Moreover, under the new FINRA Arbitration rules relating to these disputes, the granting of a TRO by a court is specifically contemplated and serves as the trigger to the requirement that an expedited arbitration be held within 15 days of the entry of any such

9

{00051865.DOC}
Case 1:09-cv-00540-WCG  Filed 05/28/09  Page 9 of 11  Document 2

injunctive order. FINRA Arbitration Rule 13804(b)(1). Indeed, without entry of an injunctive order, there is no guarantee that expedited relief will be ordered by FINRA.

**D.     Smith Barney Has Met All The Requirements Necessary To Support Issuance Of A Temporary Restraining Order.**

20.     As set forth above, Smith Barney will be irreparably harmed if Darling, Kinziger, Puissant, Wiers, Kabat, and Baird are not immediately enjoined from taking, using and/or disclosing confidential, proprietary and trade secret information belonging to Smith Barney. Moreover, based upon the agreements executed by Darling, Kinziger, Puissant, Wiers and Kabat, there is a significant likelihood that Smith Barney will be successful on each and every claim against them. Third, issuance of a temporary restraining order will preserve the *status quo* pending a determination of the issues in arbitration and no public interest would be adversely affected by issuance of a temporary restraining order. Rather, the public interest would be served since it would allow the arbitration proceeding to function as agreed to by the parties and will ensure that any arbitration victory is not a hollow, unenforceable one.

## IV.     CONCLUSION

THEREFORE, Smith Barney, consistent with its proposed Temporary Restraining Order, requests that the Court issue a Temporary Restraining Order precluding Darling, Kinziger, Puissant, Wiers, Kabat, Baird and any person or entity acting in concert with them from misappropriating Smith Barney's trade secrets and other confidential or proprietary information; precluding Darling, Kinziger, Puissant, Wiers and Kabat from soliciting Smith Barney clients in breach of their agreements; precluding Darling, Kinziger, Puissant, Wiers and Kabat from breaching their fiduciary duties to Smith Barney; precluding Darling, Kinziger, Puissant, Wiers, Kabat and Baird from engaging in unfair competition with Smith Barney; precluding Baird from

any further interference with contract; and all such further relief to which Smith Barney may show itself justly entitled.

Respectfully submitted this 28th day of May, 2009.

By: *Dawn M. Korver*
Gregory B. Conway (State Bar #1012636)
Dawn M. Korver (State Bar #1058813)
LIEBMANN, CONWAY, OLEJNICZAK & JERRY, S.C.
231 South Adams Street
P.O. Box 23200
Green Bay, Wisconsin 54305-3200
Telephone: 920-437-0476
Facsimile: 920-437-2868
Email: gbc@lcojlaw.com
dmk@lcojlaw.com

Attorneys for Plaintiff, Smith Barney, A Division of Citigroup Global Markets, Inc.

Of Counsel:
WATT BECKWORTH THOMPSON & HENNEMAN, L.L.P.
Matthew B. Henneman (Texas Bar #00790865)
1800 Pennzoil Place, South Tower
711 Louisiana Street
Houston, Texas 77002
Telephone: (713) 650-8100
Facsimile: (713) 650-8141