UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SMITH BARNEY, INC.,
a Division of Citigroup Global Markets,

    Plaintiff,

  v.                   Case No. 09-C-540

CRAIG DARLING, JEFFREY KINZIGER,
JEFFREY PUISSANT, THOMAS WIERS,
LINDSEY KABAT and ROBERT W. BAIRD
& CO.,

    Defendants.

## DECISION AND ORDER

This matter comes before the Court pursuant to the plaintiff's May 28, 2009 application for temporary injunctive relief in aid of arbitration. The Court held a hearing on May 29, 2009, which was continued on June 1, 2009, at which all parties appeared by counsel. Having considered the arguments of counsel, the Court hereby denies the application with the exception that the defendants are directed to return to Smith Barney any client account information, not including client names, telephone numbers, and post office and email addresses.

## NATURE OF THE ACTION

Plaintiff is a brokerage firm with an office in Green Bay, Wisconsin. Defendants Darling, Kinzinger, Puissant and Wiers were financial consultants and Defendant Kabat was a financial consultant associate at Smith Barney's Green Bay office until they unexpectedly resigned on Friday, May 22, 2009, in order to take a position with Defendant Robert W. Baird & Co., a competitor of

Smith Barney. Smith Barney alleged that the individual defendants breached the confidentiality, non-disclosure and non-solicitation covenants of their various agreements with Smith Barney by contacting Smith Barney clients and urging them to move their accounts to Baird.

Smith Barney originally sought return of misappropriated confidential trade secret information in the form of customer lists and other customer information and further, to enjoin the individual defendants from soliciting Smith Barney clients for themselves and Baird. At the hearing, defendants conceded that they had no right to confidential client account information and agreed to return or destroy all such information they may have taken. The defendants claimed, however, that the client information limited to names, addresses, email addresses and telephone numbers did not constitute trade secrets and that they were entitled to retain the lists of customers containing such information they had taken with them. The defendants further contend that the confidentiality and non-solicitation provisions of the various agreements they signed are invalid and unenforceable under Wisconsin law. On this basis they oppose Smith Barney's motion.

The relief Smith Barney seeks is temporary, pending an arbitration hearing on the merits before the Financial Industry Regularity Authority ("FINRA") under Rule 13804 of the FINRA Code of Arbitration Procedure. Any order this court enters would run only until the arbitration panel is able to hear the matter. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Salvano*, 999 F.2d 211, 216 (7th Cir. 1993). Entry of a temporary injunction by the court would trigger the requirement that an expedited arbitration be held within fifteen days of entry of any such order. FINRA Arbitration Rule 13804(b)(1). Unless this Court grants the relief requested, Smith Barney contends that it will suffer immediate and irreparable harm prior to the arbitration of their claims against the defendants.

2

Case 1:09-cv-00540-WCG   Filed 06/03/09   Page 2 of 12   Document 17

## DISCUSSION

In order to prevail on an application for a Temporary Restraining Order or a request for Preliminary Injunctive Relief, a party must establish:

> 1) it has a reasonable likelihood of success on the merits; 2) no adequate remedy at law exists; 3) it will suffer irreparable harm if it is denied; 4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted; and 5) the preliminary injunction will not harm the public interest.

*Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001). The Court balances these factors by using a sliding scale analysis: the greater the party's chance of success on the merits, the less strong a showing it has to make of the balance of harm in its favor. *FoodComm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003).

It is with respect to the first element that Smith Barney's request falters. Under Wisconsin law, which the parties concede applies, covenants not to compete are regarded with suspicion because the law seeks to encourage the mobility of workers. *See e.g., Farm Credit Servs. of N. Cent. Wis. ACA Wysocki*, 243 Wis. 2d 305, 312, 627 N.W. 2d 444 (2001). Wisconsin's policy toward restrictive covenants is codified at Wis. Stat. § 103.465, which provides as follows:

> **Restrictive covenants in employment contracts**
>
> A covenant by an assistant, servant or agent not to compete with his or her employer or principal during the term of the employment or agency, or after the termination of that employment or agency, within a specified territory and during a specified time is lawful and enforceable only if the restrictions imposed are reasonably necessary for the protection of the employer or principal. Any covenant, described in this subsection, imposing an unreasonable restraint is illegal, void and unenforceable even as to any part of the covenant or performance that would be a reasonable restraint.

As Judge Adelman recently noted with respect to the statute, one of its most important features is that it forbids judicial modification of an unreasonable restrictive covenant. "Thus, if a restrictive covenant is at all unreasonable, the entire provision is unenforceable, even to the extent that it is reasonable." *Henderson v. U.S. Bank N.A.*, ___ F. Supp. 2d ___, 2009 WL 1382685 *4 (E.D. Wis. May 11, 2009).

In order for Smith Barney to prevail on its motion seeking a temporary restraining order, it must convince the court that it has a reasonable likelihood of success on the merits. Given the strong Wisconsin policy reflected in § 103.465 in favor of employee mobility, and the case law applying that section to similar provisions governing non-solicitation and confidentiality provisions of other contracts, I am unable to find, at least on the record before me at this point, that Smith Barney has met the standard.

Section 103.465 has been found applicable both to confidentiality provisions and non-solicitation provisions such as those before me. *Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis. 2d 202, 218, 267 N.W. 2d 242 (1978); *Farm Credit Servs.*, 243 Wis. 2d at 314-15. To determine whether such a provision is reasonable under § 103.465, Wisconsin courts examine five factors:

1) whether the agreement is necessary to protect a legitimate business interests of the employers;
2) whether it is reasonable as to duration;
3) whether it is reasonable as to geography;
4) whether it is reasonable as to the employee; and
5) whether it is reasonable as to the general public.

*Chuck Wagon Catering, Inc. v. Raduege*, 88 Wis. 2d 740, 751, 277 N.W.2d 787 (1979). In *Van Zeeland,* the Wisconsin Supreme Court held that a confidentiality provision of a contract which prevented use or disclosure of client information indefinitely was invalid. *See also Nalco Chem.*

4

*Co. v. Hydro Techs., Inc.,* 984 F.2d 801 (7th Cir. 1993) (applying Wisconsin law) and *SYSCO Food Servs. of E. Wis., LLC v. Ziccarelli*, 445 F. Supp. 2d 1039, 1052 (E.D. Wis. 2006) (applying Wisconsin law).

In this case, defendants concede they were not entitled to take with them, and have agreed to destroy or return, all client account information. They contend, however, that they are entitled to retain the names, addresses, telephone numbers and email addresses of their clients. This information, the defendants argue, does not constitute a trade secret, and any prohibition of their use and disclosure of such information could only arise under the contract. The contractual provisions governing confidentiality in their contracts with Smith Barney, they contend, are clearly over broad within the meaning of § 103.465. To take but one example, the confidentiality provision of the Joint Production Agreements reads:

> The producers recognize and agree that all records, whether original, duplicated, computerized, memorized, handwritten or any other form, and all information contained herein, including names, addresses, telephone numbers, and financial information ("information") of any account/household or plan account brought to the joint number by the other producer, whether or not actually designated on Exhibit A, is confidential and the sole and exclusive property of S.B. [Smith Barney] and that other producer. This information is not generally known outside S.B. and is confidential and used only on a "need to know" basis. Further this information is unique and can not be easily duplicated or acquired. Consequently, the producers will not use this information or remove any such records from any S.B. office except for the sole purpose of conducting business on behalf of S.B. The producers agree not to divulge or disclose this information to any third party either during their employment or at any time thereafter.

Compl., Exhibit C.

This provision, like the provision addressed by the Wisconsin Supreme Court in *Van Zeeland*, contains no time limit. In other words, under the terms of the contract, the defendants are proscribed from ever using information about their clients they obtained during their employment

5

at Smith Barney. Similar provisions have been found invalid and unenforceable in *Nalco*, 984 F.3d at 803, and *SYSCO*, 445 F. Supp. 2d at 1053, and more recently, in *Techworks LLC v. Wille*, ___ Wis. 2d ___, ___ N.W.2d ___, 2009 WL 818970, ¶ 15, n.2 (Wis. Ct. App., March 31, 2009), where the court assumed such a provision to be invalid and unenforceable in the face of the employer's silence. Based on this authority, it would appear that the confidentiality provisions at issue here are likewise invalid.

The defendants argue that the invalidity of the confidentiality provisions in the various contracts bars enforcement of the non-solicitation provisions since they are inextricably intertwined. In *Streiff v. Am. Family Mut. Ins. Co.*, 118 Wis.2d 602, 613, 348 N.W.2d 505 (Wis. 1984), the Wisconsin Supreme Court held that where clauses of a covenant are intertwined, the covenant must be viewed in its entirety and not as divisible parts. Under these circumstances, the statutory prohibition against judicial "blue-penciling" requires that both be found unenforceable. 118 Wis. 2d at 608, 613. The defendants argue that the confidentiality and non-solicitation provisions in the contracts to which they are subject are related in just such a manner. They note, for example, that even though the non-solicitation provision only runs a year, the fact that the confidentiality provisions are permanent prevents them from being able to solicit their former clients even after the year is over. This alone, defendants contend, means that the non-solicitation provisions are invalid. *See SYSCO,* 445 F. Supp. 2d at 1053 (holding that a confidentiality covenant is a restraint against competition and intertwined with the non-solicitation covenant). Smith Barney notes that more recently, the Wisconsin Court of Appeals held in *Techworks,* that the confidential-information clause in an employment contract and a separate non-compete agreement did not satisfy "the intertwined-'indivisibility' test of *Streif* and *Mutual Service*." 2009 WL 818970, ¶ 17.

But even if the Wisconsin Supreme Court ultimately adopts *Techworks'* reasoning, the defendants point to additional difficulties that the non-solicitation provisions of the various contracts have in their own right. For example, in the non-solicitation provision of the Financial Consultant Agreement that the individual defendants signed upon commencing their employment at Smith Barney, they agreed that they would not:

> solicit by mail, by phone, by personal meeting or by any other means, either directly or indirectly, any Account whom I served or whose name became known to me during my employment at Smith Barney in any office and in any capacity. My agreement "not to solicit" means that I will not "during my employment and for a period of one year thereafter, initiate any contact or communication, of any kind whatsoever, for the purpose of inviting, encouraging or requesting any Account:
>
>   a) to transfer from Smith Barney to me or to my new employer, or
>   b) to open a new account with me or with my new employer, or
>   c) to otherwise discontinue its patronage and business relationship with Smith Barney

Compl., Exhibit F

This provision is clearly over broad and invalid under Wis. Stat. § 103.465. Read literally, it would prevent the financial advisor from contacting even individuals with whom he'd had no prior contact. It would apply to a custodian or a person who came in asking for directions. Indeed, because the provision applies to anyone whose name he learned while working at Smith Barney, it would even apply to an individual he met at a softball game after work. Similar provisions have been found invalid in *SYSCO*, 445 F. Supp.2d at 1048-49, and *JT Packard & Associates, Inc. v. Smith*, 429 F. Supp. 2d 1052, 1054-56 (W.D. Wis. 2005). The provision applies not simply to clients, but to prospective clients or even clients of other firms. Conceivably, defendants may even have learned of some of Baird's clients while working at Smith Barney. A provision that prevents

7

them from soliciting clients from other firms who have never been clients of Smith Barney is so over broad that even Smith Barney does not attempt to defend it.

The defendants are also parties to other agreements that contain narrower non-solicitation provisions. In addition to the Financial Consultant Agreement, the defendants are parties to Lead Agreements under which they agreed not to solicit any "assigned account, assigned leads or related accounts". Again, the provision would appear over broad in that it applies to individuals who may not even have an active account with Smith Barney. Leads that were assigned to a defendant, for example, may not have become customers. Smith Barney offers no explanation as to why defendants should be barred from soliciting non-clients or non-customers. Defendants are also subject to Joint Production Agreements, Franchise Protection Program Agreements, and Team Agreements. These agreements are essentially commission sharing agreements in which the financial advisor agrees to share with another financial advisor commissions generated by work he does on the account. The Franchise Protection Program Agreements provide a mechanism for a retiring or departing financial advisor to continue to share in the commissions on his accounts by transferring them to another financial advisor who then agrees to share the commissions with the brokerage and the departing financial advisor. Under these agreements, defendants agreed that in the event their employment with Smith Barney was terminated, they would not solicit any of the "core book accounts" identified in the agreement. These accounts, however, were identified at the time the agreement was entered into. The defendants note that some of the core accounts are no longer with Smith Barney. Moreover, the non-solicitation provisions also apply to accounts that the defendants may not have had contact with for years. In *Rollins Burdick Hunter of Wis. v. Hamilton*, 101 Wis. 2d 460, 304 N.W.2d 752 (Wis. 1981) for example, the Supreme Court approved

8

a non-solicitation provision limited to customers serviced during a period which was the lesser of two years before the employee's termination or the employee's period of employment. In contrast, the protection for accounts in this case applies even where the defendants have not serviced those accounts for a period of several years before their termination. In *Equity Enterprises v. Milosch*, 2001 WI App 186, ¶ 15, n.4, 247 Wis. 2d 172, 633 N.W.2d 662, the court noted that such a provision was not reasonably necessary to protect the employers legitimate business interest. Given the lack of such a limitation in this case, I am also unable to conclude, at least on the record before me, that the restriction is reasonably necessary.

In addition to the overly broad character of the provisions, the defendants also argue that Smith Barney's claim that it would be irreparably harmed by their soliciting the accounts they previously worked on is undermined by the Protocol For Broker Recruiting to which Smith Barney, along with 38 other brokers, are signatories. Under the Protocol, these financial institutions have agreed that, if a financial advisor leaves one signatory financial institution to join another signatory institution, the latter will have no monetary liability to the former if the departing financial advisor follows the terms of the Protocol and the new firm does not engage in "raiding." According to the Protocol, when a financial advisor leaves one firm to join another, the departing financial advisor can take with him or her client information, including the address, telephone number, email address and account title of their prior customers. In addition, they can immediately begin to solicit their clients when they join the new firm, as long as they do not do so before leaving. Although Baird is not a signatory to the agreement, the defendants argue that the agreement itself shows that the risk of departing financial advisors leaving with client contact information and the freedom to solicit their clients is not a significant threat to Smith Barney's business. As one court has noted, "if there

9

truly was a significant risk of substantial irreparable harm from departed financial advisors soliciting their former clients, one would not expect Smith Barney to have entered into a protocol permitting precisely that." *Smith Barney v. Griffin*, 2008 WL 325269, at *7 (Super. Ct. Mass. Jan. 23, 2008). *See also Merrill Lynch Pierce, Fenner and Smith, Inc. v. Brennan*, 2007 WL 632904, (N.D. Ohio 2007)("By setting up such a procedure for departing brokers to take client lists, Merrill tacitly accepts that such an occurrence does not cause irreparable harm."). The defendants note that under the terms of the Protocol, had they gone to any of the thirty-eight other firms that are signatories, Smith Barney had agreed that it would take no action. The fact that they chose instead to go to Baird, they argue, does not alter the threat to Smith Barney's continued existence.

While there is merit to this argument, I also note that the Protocol has certain exclusions which would apply in this case to at least the accounts that are subject to the Franchise Protection Program and those governed by the Team Agreements. By explicitly excepting these accounts from the Protocol, one could argue that Smith Barney recognizes that these account fall into a separate category. That argument is not sufficiently developed, however, for me to conclude that a temporary restraining order is warranted even as to these accounts under the circumstances here. Given the strong Wisconsin public policy in favor or employee mobility and the cases cited above, I am unable to conclude on this record that Smith Barney has a reasonable likelihood of success in defending the restrictive covenants of its agreements.

Finally, it should also be noted that the public interest in this case may also play a role. As the Court in *Griffin* noted, even aside from the presence of the Protocol, enforcement of provisions such as those at issue here raises serious concerns, not just for the parties, but also for the clients whom they serve:

10

> If these provisions are enforced to the letter, as is generally sought by the jilted financial services company, the clients' financial advisor one day simply disappears without warning. The financial advisor cannot inform her clients by telephone, letter, or email of her impending departure before she resigns because the financial services company deems this a misuse of confidential customer information. The financial advisor cannot inform them by telephone, letter or email of her departure after she has resigned because she is not allowed to take with her the client information that would allow her to know each former clients' telephone number, home address, or email address. If a client were to call the financial advisor's former telephone number at the company looking for her, the client generally is simply told that she has left the company, without explaining why she left or where she has gone. A more sinister firm might imply that the financial advisor had been fired or forced to resign or otherwise left under a cloud. If the client succeeds in tracking down where his former financial advisor has gone and reaches her at her new firm, the financial advisor must be extremely cautious in what she says, lest she be found to have solicited the client's business in violation of her non-solicitation agreement. This is hardly the way any client would wish to be treated, especially by a trusted financial advisor, yet it is precisely how these clients would be treated by financial services companies if their motions for preliminary injunctions were granted.

*Griffin* at 2008 WL 325269 at *3.

Consideration of these factors leads me to conclude that there is a substantial question whether the public interest would be served by enforcement of the provisions before me. For this reason also, the request for temporary restraining order is denied, except that, to the extent the defendants have removed confidential client information other than names, addresses, telephone numbers and email addresses, that information must be returned and or destroyed.

Finally, I note that the issue before me was whether a temporary restraining order should be granted. As the nature of these types of matters require, the hearing was abbreviated and essentially consisted of a back-and-forth argument of counsel. No evidence, other than the exhibits offered by the parties, was received. If Smith Barney believes that an evidentiary hearing is needed to provide a more developed record, the Court will set this matter for such an evidentiary hearing on an

expedited basis. Based on the record as it now stands, other than the return or destruction of client account information, the motion is denied.

      **SO ORDERED** this   3rd   day of June, 2009.

                                                  s/ William C. Griesbach
                                                  William C. Griesbach
                                                  United States District Judge